DECISION
The Ohio Department of Administrative Services ("ODAS"), plaintiff-appellant, by and through its Director C. Scott Johnson, appeals a judgment of the Franklin County Court of Common Pleas denying its motion to stay its pending arbitration with Moody/Nolan Ltd., Inc. ("Moody") and Spencer Spencer, Inc. ("Spencer"), defendants-appellees.
On December 2, 1987, ODAS entered into a contract with Robert P. Madison, International, Inc. ("Madison"), an architectural firm, for the design of the State of Ohio Computer Center ("SOCC"). Madison served as the associate architect for the construction of SOCC. Madison contracted with Spencer, who was to serve as Madison's on-site field representative for the SOCC project. Madison also contracted with Moody, who was to prepare contract documents and plans relating to the project. The Spencer and Moody consultant agreements with Madison provided for the arbitration of claims between the parties relating to the agreements.
After completion of the SOCC project, several architectural and other problems arose with the SOCC building. As a result, ODAS filed a lawsuit against Madison and various contractors and suppliers involved in the construction project, alleging breach of contract and breach of express and implied warranties ("ODAS I"). Each of the defendants denied liability in ODAS I. Madison filed a third-party claim against Spencer and Moody, asserting that because it had contracted with Spencer and Moody for some of the architectural work, Spencer and Moody were liable to Madison if Madison were found liable to ODAS. Spencer and Moody raised several defenses to the third-party claim, in which they challenged the ability of Madison to raise the claims against them based upon the doctrine of laches and estoppel. Madison, Spencer, and Moody agreed to stay the court's determination of the third-party claims in ODAS I pending the outcome of arbitration, as provided by the contracts between them.
ODAS ultimately settled its claims with Madison and several other defendants in ODAS I. As part of the settlement, Madison assigned to ODAS all of Madison's rights, claims, demands, and causes of action it had with regard to the contract and litigation against Spencer and Moody. These rights also included ODAS's right to arbitrate Madison's third-party claims against Spencer and Moody.
On January 19, 1999, ODAS filed a demand for arbitration against Spencer and Moody with the American Arbitration Association ("arbitrators"). Spencer and Moody raised several defenses to ODAS's claims, including: (1) Madison's damages claims were not assignable to ODAS; (2) ODAS's arbitration claim is barred by the doctrine of laches; (3) the damages sought by ODAS violate the doctrine of economic waste; (4) ODAS is barred from bringing arbitration against Spencer and Moody in the same proceeding; (5) ODAS's claims are barred by the statute of limitations; (6) ODAS failed to join all necessary parties; (7) ODAS is not the real party in interest; and (8) the demand for arbitration constitutes champerty.
The arbitrators requested that the parties submit briefs on the issue of whether the arbitrators had the authority to decide Spencer and Moody's legal defenses. The arbitrators found that they did have such authority.
On November 29, 1999, ODAS filed an action in the Franklin County Court of Common Pleas seeking declaratory relief and requesting that the trial court decide the legal defenses raised by Spencer and Moody. Also on November 29, 1999, ODAS filed a motion to stay, requesting that the trial court stay presentation of the legal defenses to the arbitrators while the declaratory relief action was pending.
On February 23, 2000, the trial court issued an entry overruling ODAS's motion to stay and found that the arbitrators should determine the legal defenses raised by Spencer and Moody. ODAS appeals the trial court's decision, asserting the following assignments of error:
 I. The trial court erred when it held that a panel of arbitrators, and not a court of law, should decide the validity of legal defenses raised by a party to the arbitration prior to the institution of the arbitration process itself.
 II. The trial court erred when it sua sponte dismissed Plaintiff-Appellant's Complaint for Declaratory Judgment prior to proper review and discussion of the merits.
ODAS argues in its first assignment of error that the trial court erred when it denied its motion to stay arbitration and held that a panel of arbitrators, and not a court of law, should decide the validity of legal defenses raised by a party to the arbitration prior to the institution of the arbitration process. When addressing whether a trial court has properly granted or denied a motion to stay proceedings, the standard of review is an abuse of discretion. Carter Steel Fabricating Co. v. DanisBldg. Constr. Co. (1998), 126 Ohio App.3d 251, 254-255; Harsco Corp. v.Crane Carrier Co. (1997), 122 Ohio App.3d 406, 410. An abuse of discretion is more than an error of judgment but, instead, demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency," Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621, or an arbitrary, unreasonable, or unconscionable attitude. Schaferv. Schafer (1996), 115 Ohio App.3d 639, 642.
In examining an arbitration clause, a court must be cognizant of the strong presumption in favor of arbitrability, and any doubts should be resolved in favor of coverage under the arbitration clause. Sasaki v.McKinnon (1997), 124 Ohio App.3d 613, 616-617, quoting Didado v. Lamson Sessions Co. (1992), 81 Ohio App.3d 302, 304. Ohio law encourages participation in arbitration over litigation. ABM Farms, Inc. v. Woods
(1998), 81 Ohio St.3d 498, 500; Kelm v. Kelm (1993), 68 Ohio St.3d 26. R.C. 2711.01(A) provides that:
 A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.
In the present case, we must determine whether the arbitration of legal defenses falls within the scope of the arbitration provisions. In PrimaPaint Corp. v. Flood Conklin Mfg. Co. (1967), 388 U.S. 395,87 S.Ct. 1801, the United States Supreme Court found that the existence of a contract containing a broad arbitration agreement, which was admittedly signed by the contractual parties, creates a presumption that the parties agreed to arbitrate all disputes. Id. In other words, where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. ATT Technologies, Inc. v. Communications Workersof America (1986), 475 U.S. 643, 650, 106 S.Ct. 1415, 1419. Any doubt as to the arbitrability of an issue should be resolved in favor of arbitration. Gibbons-Grable Co. v. Gilbane Building Co. (1986),34 Ohio App.3d 170, 173.
There are two types of arbitration clauses: (1) unlimited clauses providing for arbitration of all disputes arising out of a contract; and (2) limited clauses providing for arbitration of a specific type of dispute arising out of a contract. Didado, supra. In the present case, the agreement contains an unlimited clause. Paragraph 7.1 of Article 7 of the agreement provides, in pertinent part:
 Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
This arbitration clause is broadly defined, as evidenced by its extensive application to "claims, disputes or other matters in question" arising from the agreement. The existence of a contract containing such a broad arbitration agreement creates a presumption that the parties agreed to arbitrate all disputes unless expressly excluded or unless there exists the most forceful evidence of a purpose to exclude the claim from arbitration. Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen Helpers of America, Local Union 20 v. Toledo (1988), 48 Ohio App.3d 11,13.
In the present case, there is no question that the parties agreed to arbitrate all disputes arising out of the agreement. It is difficult to conceive an arbitration clause more expansive than one that encompasses all "claims, disputes or other matters in question." Because the arbitration provision is extremely broad, it creates a presumption that Spencer and Moody agreed to arbitrate all disputes arising from the agreement. It is clear that the defenses raised by Spencer and Moody all arise from the contractual agreement. Further, there is no provision in the agreement excluding any issue from arbitration, and the record does not contain any other evidence of a specific purpose to exclude disputes regarding defenses that may potentially preclude further arbitration of the merits of the dispute. See, also, Crawford v. Ribbon TechnologyCorp. (June 29, 2000), Franklin App. No. 99AP-654, unreported. Therefore, we find that ODAS has failed to demonstrate with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, and that the agreement encompasses the arbitration of the legal defenses raised by Spencer and Moody. Thus, the trial court did not abuse its discretion in denying ODAS's motion to stay the presentation of Spencer and Moody's legal defenses to the arbitration panel.
ODAS presents several arguments that we find without merit. ODAS first contends that arbitrators do not have the legal expertise to decide complex legal issues. However, the Supreme Court of Ohio has acknowledged that arbitrators have the authority to pass on purely legal issues, stating "the arbitrator is the final judge of both law and facts, and that an award will not be set aside except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable * * * and that even a grossly erroneous decision is binding in the absence of fraud." Goodyear v. Local UnionNo. 200 (1975), 42 Ohio St.2d 516, 522. Other appellate courts have also found that arbitrators have wide latitude in determining legal issues and that great deference must be given to arbitrators' legal analysis. SeeLange v. Kent State Univ. (May 14, 1999), Trumbull App. No. 98-T-0076, unreported; Ecker v. Hanusosky (Sept. 8, 1995), Lake App. No. 95-L-024, unreported.
Further, as Moody and Spencer point out, although the United States Supreme Court expressed doubt in Wilko v. Swan (1953), 346 U.S. 427, as to whether arbitrators' decisions on complex securities law could possess the accuracy of a judicial decision, the United States Supreme Court's distrust of arbitration eventually began to erode in a number of cases. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. (1985),473 U.S. 614, 626-627, 105 S.Ct. 3346, 3353-3354 (rejecting "potential complexity" as a reason for denying arbitration, stating "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.");Shearson/American Express, Inc. v. McMahon (1987), 482 U.S. 220, 232,107 S.Ct. 2332, 2340 ("we recognized [in Mitsubishi] that arbitral tribunals are readily capable of handling the factual and legal complexities of antitrust claims, notwithstanding the absence of judicial instruction and supervision. * * * Finally, we have indicated that there is no reason to assume at the outset that arbitrators will not follow the law * * *.")
Finally, in Rodriguez de Quijas v. Shearson/American Express, Inc.
(1989), 490 U.S. 477, 109 S.Ct. 1917, the United States Supreme Court expressly overruled Wilco, concluding:
 To the extent that Wilco rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants, it has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes. Id. at 481, 1920.
With regard to Mitsubishi, McMahon, and Rodriguez de Quijas, the Court of Appeals for the Third Circuit noted:
 These cases establish that the Arbitration Act represents a clear congressional rejection of judicial skepticism regarding the utility of arbitration and a clear congressional mandate that private parties who contract for arbitration, as a more efficient method of dispute resolution, shall not have their bargains frustrated. Hays and Co. v. Merrill Lynch, Pierce, Fenner Smith, Inc. (1989), 885 F.2d 1149, 1160.
Therefore, we decline to accept ODAS's contention that "[t]he legal defenses are not doctrines that can easily be understood and applied by laymen." To the contrary, as the United States Supreme Court has recognized, we have no reason to suspect that the arbitrators in the present case will not be capable or willing to follow the law regarding each of the defenses set forth by Spencer and Moody.
ODAS also asserts that First Options of Chicago, Inc. v. Kaplan
(1995), 514 U.S. 938, 115 S.Ct. 1920, supports their position that a court of law must first determine the arbitrability of the legal defenses of Moody and Spencer before the arbitration can proceed. In FirstOptions, Manuel and Carol Kaplan argued to an arbitration panel that although their wholly-owned MK Investments Company signed an arbitration agreement with First Options of Chicago ("First Options"), they personally did not sign an agreement to arbitrate disputes with First Options. Thus, the Kaplans denied that their disagreement with First Options was arbitrable and filed written objections to that effect with the arbitration panel. The arbitrators decided that they had the power to rule on the merits of the parties' dispute, and did so in favor of First Options. A Federal District Court confirmed the arbitration award, but the Court of Appeals for the Third Circuit reversed. First Options appealed to the United States Supreme Court. In finding that a court should determine the arbitrability of their dispute, the Supreme Court reaffirmed the important contractual arbitration principle that a contract governs whether a dispute is arbitrable or litigable, stating "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration." Id. at 943. Thus, the Supreme Court found, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute[.]" Id. at 942.
However, the present case is distinguishable from First Options in several respects. First, in the present case, we have already found that the parties manifested their intention to arbitrate all claims pursuant to the extremely broad language of the arbitration provision. There was no such agreement or broad arbitration provision in First Options. Second, ODAS itself originally invoked the arbitration clause of the contract in the first instance and filed the demand to arbitrate, but then sought to remove certain issues from coverage after demanding arbitration. In First Options, the court found that the Kaplans, the party who had been resisting arbitration, had never personally acquiesced to arbitration in any manner and were forced to appear before the arbitration panel, appearing only to object to the arbitration and represent MK Investments. Third, ODAS, through its assignor, Madison, unequivocally signed the contract containing the arbitration agreement thereby evincing its acquiescence to arbitration pursuant to the broad language of the arbitration agreement. In First Options, the Kaplans never personally signed an agreement.
The Supreme Court of Ohio has discussed these distinctions regardingFirst Options in Council of Smaller Enterprises v. Gates, McDonald Co.
(1998), 80 Ohio St.3d 661. In Gates, McDonald, the Council of Smaller Enterprises argued that First Options supported their claim that a trial court should determine "arbitrability" of a ninety-day demand provision. The court initially noted that the arbitration clause "is extremely broad." Id. at 664. Similar to the language of the provision in the present case, the clause in Gates, McDonald began with the language that "[a]ll disputes and controversies of every kind" shall be submitted to arbitration. Id. In finding that First Options was distinguishable, the court stated:
 When First Options is considered in its context, it does not support COSE's position. The key factor in First Options that distinguishes it from this case is that in First Options, the parties resisting arbitration had not personally signed the document containing the arbitration clause. * * * The Supreme Court contrasted the situation before it with a situation in which the parties to a valid arbitration clause have a contract providing for arbitration of some issues, and a party resists arbitration of an issue on the assertion that the contract does not require arbitration of that particular issue. * * * The presumption in favor of arbitrability applies in the latter situation, which is also present in the case sub judice.
 In the First Options situation, on the other hand, the presumption is against arbitrability because there is serious doubt that the party resisting arbitration has empowered the arbitrator to decide anything, including the arbitrator's own scope of authority. * * * The court in that instance is simply considering an aspect of the most fundamental question of all arbitration cases — the first principle of ATT Technologies
— that no party can be required to submit to arbitration when that party has not agreed to do so. The First Options conclusion regarding when a presumption against arbitrability applies is inapplicable to this case. Id. at 666-667. (Citations omitted.)
The analysis in Gates, McDonald distinguishing First Options is also applicable to the present case. First, unlike First Options, in the present case the party resisting arbitration signed the document containing the arbitration clause, via its assignor Madison. Second, unlike First Options, the presumption of arbitrability applies in the present case because the parties were subject to a valid arbitration clause, and a party is resisting arbitration of an issue on the assertion that the contract does not require arbitration of that particular issue. Therefore, we agree with the analysis set forth in Gates, McDonald and find First Options factually distinguishable from the present case. For the foregoing reasons, ODAS's first assignment of error is overruled.
ODAS argues in its second assignment of error that the trial court erred in sua sponte dismissing its complaint for declaratory judgment prior to proper review and discussion of the matter. ODAS filed a complaint seeking a determination of the legal defenses raised by Spencer and Moody, as well as a motion to stay the arbitration proceedings pending such determination. After the trial court denied ODAS's motion to stay, it terminated the entire case.
ODAS asserts it was denied an opportunity to present its case. We disagree. ODAS clearly had an opportunity to fully present its position on the issue of arbitrability. ODAS's motion to stay was dedicated to the question of arbitrability and contained fourteen pages of arguments on this issue. Further, although we do not have a record of the proceedings, the trial court stated in its February 23, 2000 entry that the matter was before it pursuant to a status conference on February 17, 2000, at which all parties were in attendance and during which several issues were discussed. Thus, it also appears that ODAS had at least the opportunity to present any further issues or arguments for consideration at this time.
ODAS also argues that the trial court did not consider or make any determination on the merits of the complaint for declaratory judgment before terminating the case. However, the trial court did not have to make a determination on the merits of Spencer and Moody's defenses because it had already found in denying ODAS's motion to stay that such a determination was for the arbitration panel, not the trial court. The denial of ODAS's motion to stay was dispositive of the issues in the complaint and, thus, the trial court's action in terminating the case could hardly be termed "sua sponte." Even if we were to characterize the trial court's termination of the case as "sua sponte," a court may suasponte dismiss a case without notice where the claimant obviously cannot possibly prevail. State ex rel. Edwards v. Toledo City School Dist. Bd. ofEdn. (1995), 72 Ohio St.3d 106, 108, citing State ex rel. Seikbert v.Wilkinson (1994), 69 Ohio St.3d 489, 490. Because the trial court had already denied the motion to stay arbitration, ODAS could not possibly have prevailed on the complaint. Therefore, ODAS's second assignment of error is overruled.
For the reasons set forth above, we find that the trial court did not err in denying ODAS's motion to stay. ODAS's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
____________ Brown, J.
LAZARUS and KENNEDY, JJ., concur.